UNITED STATED DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

*FILED*

*05 AUG 23 PM 3: 29*

*CLERK, U.S. DISTRICT COURT*
*MIDDLE DISTRICT OF FLORIDA*
*ORLANDO, FLORIDA*

JUICE IT UP FRANCHISE CORPORATION,

    Plaintiff,

v.

                                Case No._____

INDIGO INVESTMENTS, INC.
INDIGO ENTERPRISES, LLC
YOOSOOF GARDEE
RASHIDA GARDEE
TARIQ GARDEE, and
EBRAHIM GARDEE,

    Defendants.

_____/

6:05-cv-1230-ORL-22 KRS

## COMPLAINT

COMES NOW, the Plaintiff, JUICE IT UP FRANCHISE CORPORATION

("JIU") through undersigned counsel, and sues Defendants, INDIGO INVESTMENTS,

INC. ("INVESTMENTS"), INDIGO ENTEREPRISES, INC. ("ENTERPRISES"),

YOOSOOF GARDEE, RASHIDA GARDEE, TARIQ GARDEE and EBRAHIM

GARDEE , and allege as follows:

### NATURE OF ACTION

1. This is a civil action for damages to combat the willful and intentional
infringement on trademarks, and includes claims for federal trademark
infringement and dilution as well as related claims under Florida laws, including
fraud, breach of fiduciary duties, and conspiracy.

1

2. This is an action for trademark infringement in violation of section 32 of the Lanham Act, 15 U.S.C. §1114; for dilution under section 43 of the Lanham Act, and under the common law and statutory law of the State of Florida.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1338(a), as Plaintiff's cause of action arises under The Federal Trademark Act ("Lanham Act"), 15 U.S. C. §1501. Further, this Court has jurisdiction over Plaintiff's pendent and common-law claims pursuant to 28 U.S.C. §§1338(b) and 1367.

4. Venue is proper within this District pursuant to 28 U.S. C. §§1391(b) and 1400(a).

## THE PARTIES

5. JIU is a corporation formed and existing under the laws of California.

6. INVESTMENTS is a corporation formed and existing under the laws of Florida and has its principal place of business in Orange County, Florida. INVESTMENTS is a former franchisee of JIU.

7. INVESTMENTS was formed as a corporate entity on or about March 31, 2000. The initial officers of INVESTMENTS were YOOSOOF GARDEE and RASHIDA GARDEE. On or about April 23, 2003, INVESTMENTS added TARIQ GARDEE and EBRAHIM GARDEE as officers of the corporation.

8. ENTERPRISES is a limited liability company formed and existing under the laws of Florida and has its principal place of business in Orange County, Florida.

9. On or about September 2, 2002, ENTERPRISES was formed as a limited liability company. The initial managers/officers were YOOSOOF GARDEE, RASHIDA GARDEE, TARIQ GARDEE and EBRAHIM GARDEE.

10. Upon information and belief, YOOSOOF GARDEE is a resident of Orange County, Florida.

11. Upon information and belief, RASHIDA GARDEE is a resident of Orange County, Florida. RASHIDA GARDEE is the wife of YOOSOOF GARDEE.

12. Upon information and belief, TARIQ GARDEE is a resident of Orange County, Florida. TARIQ GARDEE is the son of YOOSOOF GARDEE and RASHIDA GARDEE.

13. Upon information and belief, EBRAHIM GARDEE is a resident of Orange County, Florida. EBRAHIM GARDEE is also the son of YOOSOOF GARDEE and RASHIDA GARDEE.

## BACKGROUND

14. JIU franchise and corporate stores sell smoothies, fresh juices, organic coffee and healthy snacks. Currently, JIU has stores in five states, including Florida, with an anticipation of opening in other states in the next year.

15. JIU is the owner of certain intellectual property rights, including the Juice It Up trade name, "JUICE IT UP®", and the marks, including the words JUICE IT UP. JIU has spent a considerable amount of time, effort and money to develop a proprietary system for the marketing and operation of juice bars featuring fruit juices, smoothies, and healthy snacks. The trade symbols by which the products are offered by JIU and its franchisees are distinguished from other similar juice/smoothie products sold. Such intellectual property, including the trade name, marks and the proprietary operating systems, are hereinafter collectively referred to as the "Trade Symbols".

16. JIU has engaged in extensive advertising and promotion of products and services under the Trade Symbols in Florida and other states, including use of the Trade Symbols on the Internet, direct mail, distribution of complimentary promotional items, and a variety of other advertising and promotional activities.

17. JIU has invested and continues to invest significant sums to build and maintain the JIU image and recognition throughout Florida and other states. JIU's Trade

3

Symbols are distinctive of JIU's products and services, and have been met with widespread public approval and have established demand and goodwill among customers in several states, including the State of Florida, particularly among the demographic that ascribe to a healthy, 'on the go' lifestyle.

18. In or around April 2000, INVESTMENTS, through its incorporator YOOSOOF GARDEE, made application to JIU to become a franchised JUICE IT UP® juice bar.

19. JIU approved INVESTMENTS application, and on or about April 16, 2000, a JUICE IT UP® Franchise Agreement between JIU and INVESTMENTS was executed. A true and correct copy of the Franchise Agreement between JIU and INVESTMENTS is attached hereto as Exhibit "A", and is hereinafter called the "Franchise Agreement".

20. INVESTMENTS was authorized by JIU to open a JUICE IT UP® juice bar at a location in the Orlando Premium Outlet Center located in Orlando, Orange County, Florida. INVESTMENTS secured a written lease to the premises, which is hereinafter referred to as "the Lease". The space occupied by INVESTMENTS as the JUICE IT UP® juice bar at the Orlando Premium Outlet Center is hereinafter referred to as "the Demised Premises".

21. Through the Franchise Agreement, JIU authorized INVESTMENTS the use of the Trade Symbols at the INVESTMENTS JUICE IT UP® juice bar.

22. Per the requirements of the Franchise Agreement, INVESTMENTS placed a sign for its JUICE IT UP® juice bar outside of the Demised Premises.

23. Upon information and belief, INVESTMENTS initially sold approved JUICE IT UP® juice bar products, including fruit juices and smoothies.

24. The terms of the Franchise Agreement required INVESTMENTS to pay royalties and advertising fees to JIU.

25. Beginning in or around August 2000, INVESTMENTS began failing to make its required royalty and advertising fee payment to JIU. Although INVESTMENTS made a few other payments, by 2002, all payment of royalties and advertising fees to JIU had stopped. Non-judicial attempts by JIU to obtain further payment were unsuccessful.

26. On or about February 26, 2004, JIU filed suit against INVESTMENTS seeking payment of royalties and advertising fees. That suit, captioned <u>Juice It Up Franchise Corporation a California Corporation v. Indigo Investments, Inc., a corporation</u>, was filed in the Superior Court of California, County of Orange, Case No. 04CC03403, and is hereinafter referred to as the "California litigation."

27. INVESTMENTS was served process in the California litigation on or about March 11, 2004, and thereafter responded to the California litigation and participated in discovery.

28. Upon information and belief, in November or December 2004, while the California litigation was still pending, INVESTMENTS transferred substantially all of its assets to ENTERPRISES for the consideration of $10,000.00. The assets transferred by INVESTMENTS to ENTERPRISES are hereinafter referred to as "the Assets".

29. Upon information and belief, INVESTMENTS also sought and obtained from the landlord of the Demised Premises permission to assign the Lease to ENTERPRISES.

30. The transfers cited above were made for less than adequate consideration and were made with actual intent to hinder, delay, or defraud the creditors of INVESTMENTS, including JIU.

31. ENTERPRISES received the Assets and Lease from INVESTMENTS with knowledge of the fraudulent intent on the part of INVESTMENTS and with intent to assist INVESTMENTS in such fraudulent purpose.

5

32. Thereafter, upon information and belief, the $10,000.00 received by INVESTMENTS from ENTERPRISES was disbursed to the individual defendants, including but not necessarily limited to RASHIDA GARDEE and TARIQ GARDEE.

33. INVESTMENTS did not obtain approval from or inform JIU of the sale of Assets or assignment of the Lease in violation of the Franchise Agreement.

34. After the transfer of the Assets and Lease to ENTERPRISES, upon information and belief, ENTERPRISES began operating the juice bar in the Demised Premises, selling smoothies, fruit juice, coffee and snacks.

35. ENTERPRISES operated the juice bar at the Demised Premises under the JIU Trade Symbols, including the JUICE IT UP® sign and utilized the proprietary operating system.

36. However, ENTERPRISES did not sell the JIU product at the Demised Premises but rather offered a competing juice product as well as other food and drink.

37. On or about March 11, 2005, JIU obtained judgment against INVESTMENTS in the California litigation in the amount of $88,066.49 for past due royalties and advertising fees due to JIU, as well as JIU's attorney's fees and court costs.

38. Pursuant to §55.501 et. seq., *Fla. Stat. (2004)* JIU recorded a copy of the judgment obtained in the California litigation in the Circuit Court of the Ninth Judicial Circuit, in and for Orange County, Florida in Case Number 2005-CA-2581 and INVESTMENTS was duly given notice of same. More than thirty days expired from the date of the notice to INVESTMENTS of the recording of the judgment obtained by JIU in the California litigation, but INVESTMENTS did not file an action contesting the jurisdiction of the California court which entered the judgment or the validity of the California judgment and did not record a lis pendens directed toward the California judgment.

39. Thereafter, JIU terminated INVESTMENT's rights under the Franchise Agreement.   A true and correct copy of the letter from JIU to INVESTMENT is attached hereto as Exhibit "B".

40. INVESTMENT's right to use the Trade Symbols was granted solely through the Franchise Agreement, which expressly authorizes and limits the manner and location franchisees, including INVESTMENTS, may operate the JUICE IT UP® stores using JIU's Trade Symbols.

41. Upon termination of the Franchise Agreement, any use by INVESTMENTS' of the Trade Symbols was without the consent of JIU.

42. JIU never authorized ENTERPRISES to use the JIU Trade Symbols.

43. Despite no right to use the Trade Symbol, Defendants INVESTMENTS and /or ENTERPRISES continued to sell a competitors juice products under the JIU Trade Symbols at the Demised Premises while holding the business out to the public as an authorized JIU store and representing business and products offered as being authorized by JIU.

44. On or about July 27, 2005, in a deposition in aid of execution on the domesticated judgment obtained in the California Litigation, YOOSOOF GARDEE disclosed to undersigned counsel the transfer of the Assets and the Lease from INVESTMENTS to ENTERPRISES.

45. All conditions precedent to the bringing of this action have occurred, been performed, or were waived.

COUNT I<br>VIOLATION OF SECTION 32(1) OF THE LANHAM ACT

46. JIU hereby incorporates paragraphs 1 through 45 as if fully set forth herein.

47. This is an action pursuant to 15 U.S.C. §1114.

48. JIU has  prior ownership, registration, and use of the Trade Symbols.

49. ENTPRISES' intentional use of the JIU Trade Symbols constitutes unfair competition and an unconscionable, unfair and deceptive act in the conduct of trade or commerce.

50. Use of the JIU Trade Symbols while selling a competitor's product will dilute the famous and distinctive nature of these Trade Symbols.  Federal law and state law protect JIU from such dilution of its property.

51. Use of the JIU Trade Symbols while selling non-JIU products threatens to damage the value of JIU's rights in its Trade Symbols.

52. ENTERPRISES' aforesaid acts constitute trademark infringement in violation of § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

53. ENTERPRISES' aforesaid acts have caused JIU to suffer injury and damages of such a nature that monetary damages alone cannot adequately compensate the JIU for the loss suffered.

54. ENTERPRISES' aforesaid acts are greatly and irreparably damaging to JIU and JIU is without an adequate remedy at law.

COUNT II
VIOLATION OF SECTION 43(a) OF THE LANHAM ACT

55. JIU hereby incorporates paragraphs 1 through 45 as if fully set forth herein.

56. ENTERPRISES' aforesaid acts tend to represent falsely that ENTERPRISES' goods and services are legitimately connected with JIU; tend to describe falsely that ENTERPRISES' goods and services emanate from or are authorized, sponsored or approved by JIU; and tend to designate falsely that ENTERPRISES' goods and services originate from JIU, all of which constitute violations of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

8

57. ENTERPRISES' aforesaid acts have caused JIU to suffer injury and damages of such a nature that monetary damages alone cannot adequately compensate the JIU for the loss suffered.

58. The aforesaid acts of ENTERPRISES are greatly and irreparably damaging to JIU and JIU is without an adequate remedy at law.

## COUNT III
## VIOLATION OF SECTION 43(c) OF THE LANHAM ACT

59. JIU hereby incorporates paragraphs 1 through 45 as if fully set forth herein.

60. As heretofore alleged, JIU's Trade Symbols are famous and are subject to the protection of § 43(c) of the Lanham Act.

61. ENTERPRISES' aforesaid acts dilute the Trade Symbols in that ENTERPRISES' unauthorized and unlicensed use of the Trade Symbols caused and will continue to cause the diminution of the value of the good will represented by, and of the distinctiveness of, JIU's trademarks in violation of § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

62. ENTERPRISES' aforesaid acts have caused JIU to suffer injury and damages of such a nature that monetary damages alone cannot adequately compensate the JIU for the loss suffered.

63. The aforesaid acts of ENTERPRISES are greatly and irreparably damaging to JIU and will continue to be greatly and irreparably damaging to JIU unless enjoined by this Court, and JIU are without an adequate remedy at law.

## COUNT IV
## ATTORNEYS' FEES AND EXPENSES

64. JIU hereby incorporates paragraphs 1 through 63 as if fully set forth herein.

65. As a result of ENTERPRISES' willful and malicious conduct, JIU is entitled to recover the attorneys' fees and expenses it has incurred in bringing this action pursuant to 15 U.S.C. § 1117(a).

## COUNT V
## COMMON LAW TRADEMARK INFRINGEMENT

66. JIU hereby incorporates paragraphs 1 through 45 as if fully set forth herein.

67. ENTERPRISES' aforesaid acts constitute common law trademark infringement.

68. ENTERPRISES' aforesaid acts have caused JIU to suffer injury and damages of such a nature that monetary damages alone cannot adequately compensate the JIU for the loss suffered.

69. The aforesaid acts of ENTERPRISES' are greatly and irreparably damaging to JIU and will continue to be greatly and irreparably damaging to JIU unless enjoined by this Court, and JIU is without an adequate remedy at law.

## COUNT VI
## COMMON LAW UNFAIR COMPETITION

70. JIU hereby incorporates paragraphs 1 through 45 as if fully set forth herein.

71. ENTERPRISES' aforesaid acts constitute unfair competition in that:

    a. said acts were a deliberate attempt by ENTERPRISES to obtain the benefit of and trade on the good will of JIU;

    b. said acts enable and will continue to enable ENTERPRISES to obtain the benefit of and trade on the good will of JIU;

    c. said acts damage and will continue to damage JIU's good will in that JIU does not have control over the business, products or services of ENTERPRISES;

    d. said acts have caused and are likely to continue to cause confusion, mistake or deception of the public;

    e. JIU is are entitled to enforce its Trade Symbols; and

    f. said acts will result in the unjust enrichment of ENTERPRISES.

72. ENTERPRISES' aforesaid acts have caused JIU to suffer injury and damages of such a nature that monetary damages alone cannot adequately compensate the JIU for the loss suffered.

73. The aforesaid acts of ENTERPRISES are greatly and irreparably damaging to JIU and will continue to be greatly and irreparably damaging to JIU unless enjoined by this Court, and JIU is without an adequate remedy at law.

## COUNT VII
## DECEPTIVE AND UNFAIR TRADE PRACTICES

74. JIU hereby incorporates paragraphs 1 through 45 as if fully set forth herein.

75. ENTERPRISES' aforesaid acts constitute unfair or deceptive trade practices within the meaning of the Florida Deceptive and Unfair Trade Practices Act, §501.201, *et seq.*, Florida Statutes.

76. JIU suffered a loss as a result of ENTERPRISES' foregoing violations of Florida's Deceptive and Unfair Trade Practices Act and therefore, under § 501.211(2), Florida Statutes, may recover actual damages plus attorney's fees and court costs from ENTERPRISES.

### PRAYER FOR RELIEF AS TO COUNTS I THROUGH VII

WHEREFORE, as to Counts I through VII, JIU prays:

1.     That the Court enter a judgment declaring that:

(a) ENTERPRISES use of the JUICE IT UP® name and Trade Symbols or any variation thereof infringes JIU's trademarks;

(b) ENTERPRISES use of the JUICE IT UP® name and Trade Symbols will create a likelihood of confusion and will dilute the distinctive quality of JIU's trademarks;

(c) ENTERPRISES use of the JUICE IT UP® name and Trade Symbols will violate 15 U.S.C. § 1125(a) and (c); 15 U.S.C. § 1114(a), will constitute common law trademark infringement and common law unfair competition.

(2) That the Court permanently enjoin ENTERPRISES, its servants, agents and employees, and all other persons in active concert or participation with ENTERPRISES and its successors and assigns, from:

(a) using the name JUICE IT UP® name and Trade Symbols, or any variation thereof, in connection with the operation of a juice bar and any advertisement, promotion, offering for sale, or sale of any good or service;

(b) expressly or impliedly representing itself to customers, potential customers, or the public to be affiliated in any way with JIU;

(c) representing by words or conduct that any product or service provided, offered for sale, sold, advertised, or rendered by ENTERPRISES is authorized, sponsored or endorsed by or otherwise connected with the JIU;

(d) otherwise infringing JIU's trademarks;

(e) diluting JIU's trademarks;

(f)     competing unfairly with JIU in any manner by improper use of JIU's trademarks; and

(g)     engaging in unfair or deceptive trade practices in violation of §501.201 *et seq*.; and

(3)     That ENTERPRISES be required to pay JIU three times JIU's actual damages caused by the acts of ENTERPRISES, and ENTERPRISES' profits from any sales of any products or services under JIU's trademarks or any colorable imitation of JIU's trademarks;

(4)     That ENTERPRISES be required to pay JIU  reasonable attorneys' fees and costs;

(5)     That ENTERPRISES be ordered to deliver up for destruction all labels, signs, prints, insignia, brochures, business cards, invoices and any other written or recorded material or advertisements in its possession or control containing JIU's Trade Symbols or any colorable imitation of JIU's Trade Symbols;

(6)     That ENTERPRISES be required in accordance with 15 U.S.C. § 1115 to file with this Court and serve on JIU within thirty (30) days from the date of entry of any injunction, a report in writing, under oath, setting forth in detail the manner and form in which ENTERPRISES has complied with the terms of the injunction; and

(7)     That JIU have such other and further relief as the Court deems just and equitable.

## COUNT VIII
## FRAUDULENT TRANSFER OF ASSETS UNDER §726.106(1)

77. JIU hereby incorporates paragraphs 1 through 45 as if fully set forth herein.

78. The transfer of the Assets and Lease of INVESTMENTS to ENTERPRISES was made when INVESTMENTS was not generally paying its debts as they came due and was insolvent.

79. At the time of the transfer, ENTERPRISES, by virtue of its common officers with INVESTMENTS, knew that INVESTMENTS was being sued by JIU in the California litigation.

80. ENTERPRISES knew that INVESTMENTS was insolvent at the time of the transfer, or would become insolvent as a result of the transfer.

81. By reason of the foregoing, the transfer of the Assets and the Lease is voidable pursuant to §726.106(1), *Fla. Stat. (2004)*.

WHEREFORE, for the foregoing reasons, JIU prays that this Court award the following relief:

a. Declare that the transfer of the Assets of INVESTMENTS to ENTERPRISES is null and void;

b. Declare that the transfer of the Lease from INVESTMENTS to ENTERPRISES is null and void;

c. Set aside the transfer of the Assets and Lease from INVESTMENTS to ENTERPRISES;

d. Enter an attachment against INVESTMENTS for the Assets and Lease in favor of JIU on the judgment obtained in the California litigation, as domesticated in this State;

e. Award such other and further relief as is deemed just under the circumstances.

COUNT IX
FRAUDULENT TRANSFER OF ASSETS UNDER §726.105(1)

82. JIU hereby incorporates paragraphs 1 through 45 as if fully set forth herein.

83. At the time of the transfer of the Assets and Lease, ENTERPRISES did not give reasonably equivalent value for the Assets and Lease.

84. After the transfer, the assets of INVESTMENTS were unreasonably small in relation to the potential liability in the California litigation.

85. By reason of the foregoing, the transfer of the Assets and Lease is voidable pursuant to §726.105(1), *Fla. Stat. (2004)*.

WHEREFORE, for the foregoing reasons, JUICE IT UP FRANCHISE CORPORATION prays that this Court award the following relief:

a. Declare that the transfer of the Assets of INVESTMENTS to ENTERPRISES is null and void;

b. Declare that the transfer of the Lease from INVESTMENTS to ENTERPRISES is null and void;

c. Set aside the transfer of the Assets and Lease from INVESTMENTS to ENTERPRISES;

d. Enter an attachment against INVESTMENTS for the Assets and Lease in favor of JIU on the judgment obtained in the California litigation, as domesticated in this State;

e. Award such other and further relief as is deemed just under the circumstances.

COUNT X
BREACH OF FIDUCIARY DUTY TO CREDITORS

86. JIU hereby incorporates paragraphs 1 through 45 as if fully set forth herein.

15

87. Defendants YOOSOOF GARDEE, RASHIDA GARDEE, TARIQ GARDEE, and EBRAHIM GARDEE were all officers of INVESTMENTS at the time of the transfer of the Assets and Lease from INVESTMENTS to ENTERPRISES.

88. As officers and/or directors of INVESTMENTS, Defendants YOOSOOF GARDEE, RASHIDA GARDEE, TARIQ GARDEE, and EBRAHIM GARDEE owed fiduciary duties to creditors of INVESTMENTS, including JIU, and were bound to exercise diligence and good faith in dealing with the properties of INVESTMENTS to the end that the creditors' interests, including those of JIU, would be protected.

89. Defendants YOOSOOF GARDEE, RASHIDA GARDEE, TARIQ GARDEE, and EBRAHIM GARDEE breached the duty owed to creditors, including JIU, by transferring the Assets and Lease from INVESTMENTS to ENTERPRISES for less than adequate consideration, failing to make said assets available for claims of creditors, including JIU, and failing to disburse the proceeds, albeit limited, from the sale of the assets to creditors, including JIU, but rather paying insider creditors, including RASHIDA GARDEE and TARIQ GARDEE.

90. As a result of the breaches of fiduciary duties by Defendants, YOOSOOF GARDEE, RASHIDA GARDEE, TARIQ GARDEE, and EBRAHIM GARDEE , JIU sustained damages.

WHEREFORE, for the foregoing reasons, JUICE IT UP FRANCHISE CORPORATION award damages against Defendants YOOSOOF GARDEE, RASHIDA GARDEE, TARIQ GARDEE, and EBRAHIM GARDEE, award costs of this action, and award such other and further relief as is deemed just under the circumstances.

## COUNT XI
## CONSPIRACY TO DEFRAUD

91. JIU hereby incorporates paragraphs 1 through 44 as if fully set forth herein.

92. Defendants YOOSOOF GARDEE, RASHIDA GARDEE, TARIQ GARDEE, and EBRAHIM GARDEE conspired to transfer the Assets and Lease from INVESTMENTS to ENTERPRISES so as to avoid payment of the impending judgment by JIU in the California litigation.

93. Defendants YOOSOOF GARDEE, RASHIDA GARDEE, TARIQ GARDEE, and EBRAHIM GARDEE thereafter took overt acts in pursuance of the conspiracy by effectuating the transfer of the Assets and Lease.

94. JIU suffered damages as a result of the acts performed through the conspiracy, which resulted in the insolvency of INVESTMENTS, in that JIU is unable to execute on its judgment due to the insolvency of INVESTMENTS.

WHEREFORE, for the foregoing reasons, JUICE IT UP FRANCHISE CORPORATION prays that this Court award damages against Defendants YOOSOOF GARDEE, RASHIDA GARDEE, TARIQ GARDEE, and EBRAHIM GARDEE, award costs of this action, and award such other and further relief as is deemed just under the circumstances.

Respectfully submitted this 23rd day of August, 2005.

NANCY E. BRANDT
Fla. Bar No. 065102
BOGIN, MUNNS & MUNNS
2601 Technology Drive
P.O. Box 2807 (32802-2807)
Orlando, Florida 32804
Tel. 407-578-1334
Fax 407-578-2181
Attorneys for Plaintiff